The appeal in 81-116 is by Catherine Parker Pittman from a judgment entered in a breach of contract action filed by Linda Pittman Johnson in behalf of her minor children seeking relief on account of the terms of a decree entered in a divorce action between her and her former husband James Bradford Pittman, now deceased.
The appeal in 81-280 is by Linda Pittman Johnson in behalf of her minor children from the judgment dismissing an action by her seeking payment by the executrix of her former husband's last will and testament, from his estate, of postmortem child support together with liquidated damages, provided for by the terms of the modified decree of divorce upon the happening of certain contingencies.
On 30 October 1978, James Bradford Pittman was killed in a plane crash. His will was probated in Baldwin County and letters testamentary issued to his widow, Catherine Parker Pittman, as executrix. Pittman's former wife, Mrs. Johnson, filed two sworn claims against the estate demanding monies she contended were owed her and her two minor children under the terms of decrees entered in the divorce action to which we have alluded. The claims were denied. Mrs. Johnson then filed a three count complaint against Mrs. Pittman, as executrix, in the Circuit Court of Jefferson County. On motion of the executrix the action was transferred to the Circuit Court of Baldwin County, the proper forum for same.
The original complaint contained three claims: Count I alleged the decedent breached one provision of the divorce decree requiring that each of the minor children be made the beneficiary of a $25,000 life insurance policy; $50,000 in damages was demanded.
Count II claimed postmortem child support payments under other provisions of that decree; $38,775 was claimed due in that regard.
Count III alleged that Mrs. Johnson was entitled to $1,000 liquidated damages because of a provision incorporated in the decree relating to child support. Counts II and III were dismissed by the trial court on motion of Mrs. Pittman.
Mrs. Johnson amended her complaint to add as a defendant Maryon Pittman Allen, in her capacity as trustee of two trusts created by decedent during his lifetime. Subsequently, Mrs. Johnson amended Count I of her original complaint, making reference to the two insurance policies insuring the life of her former husband, the decedent. *Page 1378 
The proceeds of those policies have been paid to decedent's sister, Maryon Pittman Allen, as trustee under the trust indentures established for the benefit of Pittman and Mrs. Johnson's minor children.
The case was submitted to the trial court upon stipulations of fact and briefs in support of the respective contentions of the parties. There was no ore tenus trial.
Thereafter, the trial court entered judgment awarding each of the minor daughters the sum of $25,000 together with interest from the date of decedent's death. The court further found that no order to alter, amend, or modify the existing trusts was warranted.
The executrix appeals from that judgment (No. 81-116) and Mrs. Johnson cross-appeals from the judgment dismissing Counts II and III of her original complaint (No. 81-280). For the sake of simplicity and clarity, we address each appeal separately.
 Mrs. Pittman's Appeal
A summary of the facts pertinent to this appeal is: Linda Pittman Johnson, and the decedent, James Bradford Pittman, were married in 1963. Two children were born of that marriage: Jennifer Bradford Pittman and Catherine Aubrey Pittman. In September 1969, a decree was entered dissolving the marriage between decedent and Mrs. Johnson. That decree incorporated an agreement of the parties which provided:
 "3. Respondent [James Pittman] shall make each minor child of the parties an irrevocable beneficiary of a $25,000.00 life insurance policy on the life of the respondent and respondent shall pay and become liable for such premiums thereof."
After that judgment was entered, James Pittman caused an existing policy insuring his life for the sum of $50,000 to be converted into separate policies for the sum of $25,000 each, issued and naming as the irrevocable beneficiary of each, his sister, Maryon Pittman Allen, as trustee of the two trusts previously mentioned, for the benefit of Jennifer and Catherine Pittman. Later, the divorce decree was modified but left paragraph 3 of the original decree, supra, unchanged. Pittman died with the two $25,000 insurance policies in full force and effect. The proceeds of those policies were paid to the trustee subject to disposition according to the terms of those trusts.
We note, as indicated above, the ore tenus rule does not apply to this case. This being true, we review the evidence denovo. Stiles v. Brown, 380 So.2d 792 (Ala. 1980).
The dispositive issue in Mrs. Pittman's appeal is whether the indentures of trust established by James Pittman for the benefit of his daughters complied with, or substantially so, the insurance requirements of the original decree of divorce. We opine that the trust indentures did substantially comply with the terms of the decree regarding the required insurance policies.
We find appropriate to this question the maxim that "equity looks through form to substance, and [an] equity court is interested in substantive justice rather than mere technicalities of procedure," United States Finance Co. v.Jones, 288 Ala. 238, 259 So.2d 264 (1972). The decedent, Pittman, on 13 January 1970, established two indentures of trust with his two daughters as beneficiaries, and his sister, Maryon Pittman Allen, as trustee. On 14 January 1970, the next
day, Pittman converted the $50,000 insurance policy into two $25,000 policies and designated his sister, Mrs. Allen, as trustee, the beneficiary of each policy, the proceeds of each to be disposed of according to terms of trust instruments executed the day before. The deposition of Frederick E. Miller, as insurance agent, admitted as evidence under stipulation, shows that Pittman's reason for converting the life insurance policy, to make two of one, was to effectuate compliance with the divorce decree. That evidence creates a strong presumption that Pittman established the trusts and divided the insurance policy for the express purpose of complying with the agreement incorporated in the decree. There is no evidence in the record to the contrary anywise rebutting that presumption. Such an interpretation of, and conclusion from, that evidence is both logical as well as reasonable. *Page 1379 
Mrs. Johnson contends the trustee holding proceeds of the policies and title thereto, in trust for the benefit of the minor children, defeats the purpose of the insurance provision of the divorce decree by delaying time for payment of such proceeds to the children.
The patent purpose for requiring Pittman to make each of his daughters irrevocable beneficiaries of life insurance policies was to ensure that in the event he suffered an untimely death, as he in fact did, the children would, in any event, be protected to the fullest extent possible with the proceeds of the insurance policies.
Strict compliance with a literal reading of the insurance provision in the decree is not necessary if there issubstantial compliance that effectuates the underlying purpose of that provision and the intent evidenced by it. "Substantial compliance" may be defined as "actual compliance in respect to substance essential to every reasonable objective," of a decree giving effect to equitable principles — equity — in the true meaning of that word. Application of Santore, 28 Wn. App. 319,623 P.2d 702 (1981). Substantial compliance means compliance which substantially, essentially, in the main, for the most part, satisfies the means of accomplishing the objectives sought to be effected by the decree and at the same time does complete equity. See North Carolina Nat'l Bank v. Burnette,297 N.C. 524, 256 S.E.2d 388 (1979). What constitutes substantial compliance is a matter dependent upon the particular facts of each case, none ever quite a clone of any other. See Trussellv. Fish, 202 Ark. 956, 154 S.W.2d 587 (1941).
What greater protection could be provided than a trust administered by a trustee; a fiduciary circumscribed by law severely restricting waste, mismanagement or dissipation, of income and corpus of those trusts as opposed to immediate and full payment to their guardian or custodian?
In the event the proceeds of the policies had been paid to the minor children, one would encounter a variety of troublesome statutorily required procedures, costly and time consuming. The beneficiaries, minors under eighteen years of age, may not be paid death benefits by a life insurer. §27-14-25, Code 1975. Payment could be made only to the guardian, Mrs. Johnson. She, in order to receive the funds, would be required to increase the amount of her bond to the extent of $100,000, at a not inconsiderable additional premium. See § 26-3-1, Code 1975. She could only place those life insurance death benefits in investments authorized by statute or at her own peril except in very limited exceptional instances. See § 26-4-3, Code 1975. She would be required to provide an accounting of her management of the insurance proceeds in her wards' estates, "at least once in three years," requiring a hearing in the court of probate, necessitating the appointment of a guardian ad litem, with the attendant fees, costs incident to all of these proceedings. See § 26-5-2, Code 1975, and Rule 17, ARCP. Should circumstances require invasion of the corpus of the wards' estates, it could only be done upon application to the court of probate; action of that court effective only after appointment of a guardian ad litem and a hearing. § 26-4-63, Code 1975. Final distribution to the wards of the entire estate of each is required when each attains full age (19) years), or upon the happening of contingencies stated in § 26-5-7, Code 1975.
The details and requirements of guardianship proceedings contrast to the flexibility of those available to a trustee. Directions to the trustee are contained in paragraph 6A of the trusts. It provides:
 ". . . During the term of this trust, the Trustee shall spend such amount as she may in her sole wisdom, judgment and discretion deem to be for the best interest of said Beneficiary in the manner of supporting, maintaining, caring for and educating the said Beneficiary. The amount to be expended on the education of the Beneficiary is to be determined by the Trustee, she having due regard for the desire and aptitude of said Beneficiary for an education. Her judgment in this regard shall be definite and final." *Page 1380 
There is no prohibition against invasion of principal, should that become necessary, nor is there any requirement for judicial proceedings with their attendant costs and legal fees.
Additionally, paragraph 7 of the instruments of trust establishes the trustee's powers and provides for investment of the trust estate without regard to statutes limiting the nature and kind of investment; subject only to the rules of law regarding prudence, and fiduciary responsibilities and liabilities.
In light of all of these considerations Mr. Pittman is to be commended for exercising sound, protective judgment and foresight. The same conclusion was reached by the Civil Appeals Court of Texas in a case involving an analogous set of facts.Gray v. Bush, 430 S.W.2d 258, 265 (Tex.Civ.App. 1968). Analyzing the former wife's claim, in that case, that she was entitled to the trust established by the decedent, that court said:
 ". . . By the same token and as applied to the instant controversy, it would seem that where before his death Dr. Gray had provided for the separate estate of the Trust to fulfill the very obligation which was the objective to be accomplished by his original covenant in the property settlement agreement, such trust estate would under equitable principles properly be treated as having been created to fully accomplish and discharge the obligation which, but for the creation of the trust, would otherwise have continued to be that of his estate. What was done seems to have been the result of sound judgment on the part of the deceased, and that obviously was the conclusion of the trial court."
Under the cited authorities, our review of the evidence denovo, and the rationale here employed, this court finds that James Pittman substantially complied with the agreement embodied in the divorce decree and therefore we are constrained to reverse the judgment in 81-116 and here enter judgment in that case in accord with this opinion.
 Mrs. Johnson's Cross-Appeal
According to the terms of the decree of modification, James Pittman was obligated to pay for the benefit of each of his minor daughters the sum of $275 per month continuing beyond the age of nineteen years so long as she was enrolled in an institution of higher learning, provided in no event would he be obligated to pay child support for that child after she attained the age of twenty-three years.
Upon the bases of those terms of the decree of modification, Mrs. Johnson contends that Pittman's estate is liable for postmortem child support payments. Further, that the trial court erred in granting Mrs. Pittman's motion to dismiss and strike Count II of Mrs. Johnson's complaint seeking payment of postmortem child support.
At common law, child support obligations terminate at death in the absence of an express provision having the effect of requiring continued payment after death. That must be found in the decree of divorce. E.g., Bailey v. Bailey, 86 Nev. 483,471 P.2d 220 (1970).
In Alabama, a distinction is made between alimony or support "in gross" and mere periodic payments for current and continuous support.
Periodic payments are modifiable by the court, unless clearly denominated otherwise, based on the contingencies of a change in circumstances of the parties. Therefore, a provision in a divorce decree for a monthly allowance for future maintenance and support does not charge the estate with those payments, but terminates upon the death of the husband, the event upon the happening of which the obligation of support would have ended had there been no divorce. LeMaistre v. Baker, 268 Ala. 295,105 So.2d 867 (1958); See also, Jenkins v. Jenkins,406 So.2d 976 (Ala.Civ.App. 1981). On the other hand, alimony or support payments "in gross" are not to be changed or modified, without jurisdiction being expressly retained after expiration of thirty days from the date of the decree; payments of the latter kind become vested at the time of *Page 1381 
divorce. McEntire v. McEntire, 345 So.2d 316 (Ala.Civ.App. 1977); Jenkins, supra. As a result, payments "in gross" survive the death of the husband and are chargeable against his estate.Hager v. Hager, 293 Ala. 47, 299 So.2d 743 (1974).
We have carefully reviewed the provisions regarding child support in the original decree here under examination as well as those provisions respecting the same in the decree of modification. It is clear that these provisions do not effectuate a vested right, but merely provide periodic allowances for current and continuous support until terminated. Furthermore, this is in harmony with the rule in Mahaffey v.First Nat'l Bank, 231 Miss. 798, 824, 97 So.2d 756, 766 (1957), with which we agree. It states:
 ". . . Where an agreement approved by the divorce decree requires that the father maintain a life insurance policy for the benefit of the child, this tends to show that the parties thought that the child support ceased at the father's death."
We opine that the trial court acted properly and was not in error when it dismissed the claim for postmortem child support.
By the terms of the decree of modification Pittman agreed to make all child support payments when due and in the event of noncompliance further agreed to pay Mrs. Johnson, formerly Mrs. Pittman, liquidated damages in the amount of $1000 in excess of those sums which were delinquent together with attorneys' fees incurred in compelling compliance with the terms of payment. Mrs. Johnson contends the trial court erred in dismissing her claim seeking payment of the liquidated damages and attorneys' fees. She claims entitlement to this because Pittman failed to comply with the decree of modification. She asserts he defaulted when he failed to make their minor children irrevocable beneficiaries of the $25,000 life insurance policies. Because this court has determined that Pittman did
substantially comply with the original and the modified decree of divorce, Mrs. Johnson's claim is due to be denied. Therefore, we find no error in the action of the trial court in dismissing her claim for liquidated damages and attorneys' fees.
It follows that the judgment in No. 81-820 is due to be and is hereby affirmed.
JUDGMENT IN NO. 81-116 IS HEREBY REVERSED AND RENDERED.
JUDGMENT IN NO. 81-280 IS HEREBY AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.