EMBRY, Justice.
The issue in this case is whether, under the instant trust, trustees were empowered to convey trust property to a corporation in exchange for all of the stock of the corporation and then distribute the corporate stock to the beneficiaries of the trust.
The Circuit Court of Tuscaloosa County granted William McCollum Corporation’s (the Corporation) motions for summary judgment and denied William Cleveland *5 McCollum’s (McCollum’s) application for rehearing to that court. This appeal followed.
The facts are undisputed. They are stated by the Corporation in brief:
“William McCollum died in 1952, leaving by Will, 172 acres of land to four children-Trustees, in Trust for beneficiaries, who, for all practical purposes, were his heirs at law. This property was held and managed by those Trustees until June 5, 1980, when the two remaining Trustees living created a corporation, and conveyed to the corporation all of the land in exchange for all of the corporate shares, and who then divided all of those shares among William McCollum’s heirs in the same proportion that they would have had an interest in the land had it passed by intestacy.
“The creation of the corporation, and the deed of the land, and the distribution of stock (contrary to appellant’s statement of the facts) all took place on June 5, 1980.
“Though the Trustees under the Will created the corporation, neither of them became an officer or director.
“There has been no question but that the stock was divided according to what would have been an intestate interest in the land.
“The Plaintiff in the case, by deposition, candidly admitted that all he wanted was his share of the Estate so it could be sold.

“Based on Plaintiff’s deposition and the affidavit of Pearletta Stallworth, the Court granted motions for summary judgment.”
William McCollum’s will granted the following powers to the trustees for the administration of the trust:
“II.
“Any one or more of my Executors who may be acting as Executor and Trustee or Executor or Trustee from time to time shall have all of the right, power and authority herein given them all, provided all those acting take unanimous action.
“HI.
“I hereby authorize and empower my Executors and Trustees to sell, dispose of, handle and convey any or all of my property as fully and completely as I could do if living, except as herein otherwise provided and subject to all of the terms and provisions of this will.
“I advise my family to retain my lands and to keep them as a home for the family, but this is only my suggestion and advice, as I give my Executors and Trustees (such one or more of them as may be acting from time to time) full right, power and authority to partition, divide, sell, convey and dispose of all of my lands or any part of them, from time to time, in any way that they may see fit, for the equal benefit of the beneficiaries of my will, hereby providing that any disposition and other handling of my lands which all of my acting Executors and Trustees (or Executors or Trustees, in whatever capacity or capacities they may be acting) may see fit to take for the equal benefit of all beneficiaries of my will, shall be valid and effective.
[The beneficiaries were, or were equivalent to, the Testator’s heirs at law.]

“VIII.
“It is my will, wish and provision that no beneficiary under my will and none of my family shall take any title to any specific property or assets of my estate, but that my Executors and Trustees shall take full and complete title to all of my property and estate and shall handle all of it as provided in this will, and the rights, interests and benefits of the beneficiaries of my estate shall be, under this will, only the right to receive his or her share of the net income during administration and the net proceeds of my estate after the same has been handled, administered, conveyed or otherwise disposed of under the terms of this will and after all *6 of the expenses and costs and fees for administering my estate shall have been paid.”
A bifurcated issue is presented for our review. First, McCollum contends the transfer of trust property to the Corporation was illegal. Second, that the transfer constituted a breach of fudiciary duty by the trustees. We will consider the issues jointly.
Alabama Const., Art. IV, § 74, established bounds on the Legislature to not allow trust funds to be invested in the stock of a private corporation. It is settled, however, that a trustee may be empowered by a trust instrument to invest trust property in stock of a private corporation. See Liberty National Life Insurance Co. v. First National Bank of Birmingham, 274 Ala. 659, 151 So.2d 225 (1963). The will and trust to be construed in this case gave the greatest possible latitude to the trustees, but did not specifically authorize that the trust funds be invested in private corporate stock.
To determine whether, in the instant case, the testator’s intention was that the trustees be given the power to invest the land in private stock, we must first note the reason for the traditional limitations on investments of fiduciary property in private stock: it is clearly the avoidance of risk of loss. In White v. White, 230 Ala. 641, 162 So. 368 (1935), this court stated: “There is no reason why the Trustee should not make the investment in some security which cannot fail.”
In the instant case, the trustees created a corporation, transferred trust properties to that corporation, and then took all of the stock of the corporation and divided it among the beneficiaries of the trust. There are no allegations of self-dealing, waste, or loss. The beneficiaries have, in fact, come into complete control of the land and can now sell or manage the land as they wish. The primary harm alleged by beneficiary McCollum is that:
“Instead of the property being converted to some form which could provide immediate financial benefits to the Plaintiff and all other heirs of William McCollum, it is locked up where it could do the least good for the most people. It is hard to conceive that Mr. William McCollum ever intended or would have desired that his property be held up in such a way.”
The case of Title Guarantee Loan & Trust Co. v.. Woodward, 238 Ala. 304, 191 So. 363 (1939), provides authority for the trustee’s action in the instant case. There, this court approved the exchange of trust assets for new private, “non-legal” securities in the corporation the testator-grantor had owned, though this was not specifically allowed by the testamentary trust. Approval of this court was based on several factors: the testator had owned a considerable amount of the stock of the company during his life, he had founded the company and controlled it and, the trust instrument authorized investment of the trust assets, though not in private corporate stock. This court found there was sufficient intent under those facts to grant authority to the trustee to invest in private corporate stock.
The instant facts support the Corporation’s contention the trustees acted within their granted power. Here, broad powers are granted to the trustees to “sell, dispose of, handle, and convey” the trust property as “fully and completely as I could do if living.” This power is inferentially restricted as follows:
“I advise my family to retain my lands....

“It is my will, wish and provision that no beneficiary ... shall take any title to any specific property....”
A literal reading of the will is supportive of McCollum’s contention that the trustees were not granted the power to invest the trust funds in private corporate stock. We find, however, there was substantial compliance with the intent expressed in that document.
In Pittman v. Pittman, 419 So.2d 1376 (Ala.1982), this court had occasion to consider whether, in placing the proceeds of a life insurance policy in trust for his children, Mr. Pittman substantially complied *7 with the provisions of a divorce decree. We stated:
“Strict compliance with a literal reading of the insurance provision in the decree is not necessary if there is substantial compliance that effectuates the underlying purpose of that provision and the intent evidenced by it. ‘Substantial compliance’ may be defined as ‘actual compliance in respect to substance essential to every reasonable objective,’ of a decree giving effect to equitable principles — equity—in the true meaning of that word. Application of Santore, 28 Wash. App. 319, 623 P.2d 702 (1981). Substantial compliance means compliance which substantially, essentially, in the main, for the most part, satisfies the means of accomplishing the objectives sought to be effected by the decree and at the same time does complete equity. See North Carolina Nat’l Bank v. Burnette, 297 N.C. 524, 256 S.E.2d 388 (1979). What constitutes substantial compliance is a matter dependent upon the particular facts of each case, none ever quite a clone of any other. See Trussell v. Fish, 202 Ark. 956, 154 S.W.2d 587 (1941).”
419 So.2d at 1379-1380.
The expressed objective of William McCol-lum in establishing the trust in question was that his heirs receive equal benefit from his estate without taking title to any specific property. We think the trustees have, in a creative manner, substantially complied with those intentions by transferring the trust property to a private corporation and then distributing all the stock of that corporation to the beneficiaries of the trust. We find they have accomplished the objectives “sought to be effected” by William McCollum in the establishment of the trust in question. Id.
We note, as the Corporation aptly states in its brief, these “Trustees have not ‘invested’ the Trust res in the ordinary sense; they only vested the property through corporate form.”
We therefore hold that, under the powers of the instant trust, and in the instant circumstances, the trustees were empowered to convey trust property to a corporation in exchange for all of the stock of the corporation and then distribute the corporate stock to the beneficiaries of the trust. By so doing, they have breached no fiduciary duties. The judgment of the trial court is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, AL-MON and ADAMS, JJ., concur.