MOORE, Judge.
J.M.S. (“the father”) appeals from a judgment of the Bessemer Division of the Jefferson Juvenile Court (“the juvenile court”) holding him in contempt for refusing to pay child support as ordered by the Superior Court of Orange County, California. We affirm the juvenile court’s judgment.

Procedural History

On July 21, 2015, the State of Alabama, on behalf of Y.R.S. (“the mother”), filed a petition requesting the juvenile court to hold the father in contempt for refusing to pay child support in accordance with an order that had been entered by the Superi- or Court of Orange County, California, on June 19, 2006. The State attached to its petition a certified copy of the California order, as well as a certified copy of the payment record maintained by the California Department of Child Support Services.
On August 10, 2015, the juvenile court, through a referee, entered an order registering the California order and finding the father in contempt of court. The juvenile court subsequently appointed an attorney for the father, who requested a rehearing, which was granted. On August 18, 2015, the juvenile-court judge confirmed the referee’s findings, ordered the father incarcerated for 10 days, and directed that the father pay at least $1,200 in order to be released from jail. On August 20, 2015, the juvenile court released the father from jail after he paid the $1,200. That same day, the father filed a petition for a writ of mandamus with this court. On August 24, 2015, this court notified the parties that it was treating the father’s petition as an appeal.

Discussion

I.
The father contends that the juvenile court lacked jurisdiction to enforce the California child-support order because, he says, the order was not registered in Alabama before the contempt proceedings were initiated. Section 30-3D-602, Ala. Code 1975, a part of the Uniform Inter *1259 state Family Support Act (“the UIFSA”), § 30-3D-101 et seq., Ala.Code 1975, provides:
“(a) Except as otherwise provided in Section 30-3D-706, [Aa.Code 1975,] a support order or income-withholding orr der of another state or a foreign support order may be registered in this state by sending the following records to the appropriate tribunal in this state:
“(1) a letter of transmittal to the tribunal requesting registration and enforcement;
“(2) two copies, including one certified copy, of the order to be registered, including any modification of the order;
“(3) a sworn statement by the person requesting registration or a certified statement by the custodian of the records showing the amount of any arrearage;
“(4) the name of the obligor and, if known:
“(A) the obligor’s address and Social Security number;
“(B) the name and address of the obligor’s employer and any other source of income of the obligor; and
“(C) a description and the location of property of the obligor in this state not exempt from execution; and
“(5) except as otherwise provided in Section 30-3D-312, [Aa.Code 1975,] the name and address of the obligee and, if applicable, the person to whom support payments are to be remitted.”
At the time of the filing of the petition in the juvenile court, our caselaw held that “[o]nly strict compliance with [the UIFSA] registration procedure conferred] subject-matter jurisdiction upon an Aabama circuit court to enforce ... a foreign child-support judgment.” Ex paute Ortiz, 108 So.3d 1046, 1050 (Aa.Civ.App.2012) (construing former § 30-3A-602, Aa.Code 1975, the predecessor to § 30-3D-602). During the pendency of this petition, however, this court has reconsidered that issue:
“[T]his court is no longer of the opinion that strict compliance with [§ 30-3D-602(a), Aa.Code 1975,] is required. No language in the statute itself mandates strict compliance with its provisions, and our previous opinions offer no analysis or discussion as to why strict compliance should be required.
[[Image here]]
“... [T]his court now overrules the line of cases requiring strict compliance with the registration requirements found in § 30-3D-602(a) and holds, instead, that substantial compliance with those requirements is sufficient.”
Ex parte Reynolds, 209 So.3d 1122, 1128 (Aa.Civ.App.2016).
“The general rule is that a case pending on appeal will be subject to any change in the substantive law.” Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 438 (Ala.2001). Therefore, in the present case, this court must determine if the State “substantially complied” with § 30-3D-602(a).
“‘Substantial compliance’ may be defined as ‘actual compliance in respect to substance essential to every reasonable objective,’ of a decree giving effect to equitable principles—equity—in the true meaning of that word. Application of Santore, 28 Wash.App. 319, 623 P.2d 702 (1981). Substantial compliance means compliance which substantially, essentially, in the main, for the most part, satisfies the means of accomplishing the objectives sought to be effected by the decree and at the same time does complete equity. See North Carolina Nat’l *1260 Bank v. Burnette, 297 N.C. 524, 256 S.E.2d 388 (1979). What constitutes substantial compliance is a matter dependent upon the particular facts of each case, none ever quite a clone of any other. See Trussell v. Fish, 202 Ark. 956,154 S.W.2d 587 (1941).”
Pittman v. Pittman, 419 So.2d 1376, 1379 (Ala.1982).
In the present case, the State attached a “registration statement” to its petition, notifying the juvenile court that the State was requesting registration of the California order. The registration statement served as a functional equivalent of “a letter of transmittal to the tribunal requesting registration and enforcement.” § 30-3D-602(a)(l). See, e.g., Twaddell v. Anderson, 136 N.C.App. 56, 523 S.E.2d 710 (1999). The State filed only one certified copy of the California order, which effectively proved its authenticity so as to substantially comply with the purpose of § 30-3D-602(a)(2). See Ex parte Reynolds, supra. The State attached to its petition a sworn statement of the arrear-age by the “custodian of the records” as required by § 30-3D-602(a)(3). The name of the obligor and the obligor’s address and Social Security number also were included in compliance with § 30-3D-602(a)(4) and § 30-3D-602(a)(4)(A). The State did not comply with §§ 30-3D-602(a)(4)(B) and (C), which require “the name and address of the obligor’s employer and any other source of income of the obligor” and “a description and the location of property of the obligor in this state not exempt from execution”; however, those subsections are to be complied with only “if known.” Finally, the State provided “the name and address of the obligee and, if applicable, the person to whom support payments are to be remitted.” § 30-3D-602(a)(5).
Based on the foregoing, we conclude that the State “satisfie[d] the means of accomplishing the objectives sought to be effected,” Pittman, 419 So.2d at 1379, and, thus, that it substantially complied with § 30-3D-602(a) so that the California order was registered when filed with the juvenile court on July 21, 2015. See § 30-3D-603(a), Ala.Code 1975 (“A support order or income-withholding order issued in another state or a foreign support order is registered when the order is filed in the registering tribunal of this state.”). At that point, the juvenile court acquired subject-matter jurisdiction to enforce the California order without the necessity of any further court action to confirm, ratify, adopt, or “domesticate” the California order. See Uniform Comment to § 30-3D-603, Ala.Code 1975 (“Conceptually, the responding tribunal is enforcing the order of a tribunal of another state or a foreign support order, not its own order.”).
The father has not cited any authority for the proposition that a contempt proceeding cannot be initiated simultaneously with the registration of a foreign child-support order. In fact, the UIFSA specifically provides that “[a] petition or comparable pleading seeking a remedy that must be affirmatively sought under other law of this state may be filed at the same time as the request for registration or later.” § 30-3D-602(c). In this case, the State registered the California order by attaching the necessary documents to the contempt petition, which specified the remedy the State was seeking in accordance with § 30-3D-602(c). The juvenile court did not violate the UIFSA by accepting the contempt petition at the same time as the request for registration of the California order.
Section 30-3D-603(b) provides: “A registered support order issued in another state or a foreign country is enforceable in *1261 the same manner and is subject to the same procedures as an order issued by a tribunal of this state.” In this case, the juvenile court enforced the California order by finding the father in contempt and by ordering him incarcerated for 10 days unless he paid $1,200. In this state, before a court can issue an order holding an obligor parent in civil contempt of a child-support order, the court must follow the procedures set out in Rule 70(A), Ala. R. Civ. P. T.L.D. v. C.G., 849 So.2d 200, 204 (Ala.Civ.App.2002). In such cases, Rule 70(A)(c) requires the filing of a petition containing allegations of the facts constituting the contempt, Rule 70A(c)(l), and the issuance of process notifying the alleged contemnor of the hearing on the petition and the consequences of failing to appear at the hearing. Rule 70(A)(c)(2). In addition, an alleged contemnor, if determined to be indigent, must be appointed counsel in actions involving allegations of criminal contempt, unless he or she waives that right. Rule 70(A)(c)(3).
The record shows that the State filed a petition alleging that the father had the ability to pay the child support awarded in the California order but that he had willfully failed to comply with the California order. The petition further requested that the father be required to show cause why he should not be held in contempt of court. The juvenile court issued process, which notified the father that he had 14 days to respond to the petition or else a default judgment could be entered against him. That notice also informed the father of the date and time a hearing was scheduled on the matter before a referee. According to a subsequent order entered by the referee, the father waived his due-process rights at that hearing. Upon rehearing, the father did not object based on the juvenile court’s alleged failure to follow Rule 70(A) in any respect, and he did not request a new trial to correct any alleged deficiencies in the procedure leading to the contempt adjudication. “We do not consider issues which were not first raised in the trial court.” Sanders v. Mullins, 579 So.2d 1349, 1350 (Ala.Civ.App.1990). Accordingly, we find no merit in the father’s argument that the juvenile court failed to follow the proper procedure when adjudicating the contempt petition.
II.
The father also argues that the juvenile court violated his due-process rights by adjudicating him to be in criminal contempt of court. We note, however, that the father failed to make this argument to the juvenile court. Therefore, it was not preserved for review by this court. See, e.g., J.K v. N.J., 23 So.3d 57, 60 (Ala.Civ. App.2009).
III.
Lastly, we address the father’s argument that the juvenile court improperly incarcerated him for a debt in violation of Art. I, § 20, Ala. Const.1901. We have clearly held that Art. I, § 20, Ala. Const. 1901, is inapplicable to “the contemptuous failure to pay child support.” Dolberry v. Dolberry, 920 So.2d 573, 578 (Ala.Civ.App. 2005). Therefore, the father’s argument is without merit.

Conclusion

Based on the foregoing, we affirm the juvenile court’s judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.